# TABLE OF CONTENTS

| EXHIBITS | PAGES |
|---|---|
| Exhibit A | 1 - 2 |
| Exhibit B | 3 - 4 |
| Exhibit C | 5 - 7 |

EXHIBIT A

ASSEMBLY BILL NO. 860

Digest of Senate Amendments to the Bill

1. Amendments of June 5:

    a. Makes the wiretapping and eavesdropping penalties inapplicable to telephone devices regulated and licensed by the P.U.C. This will insure that justifiable and regulated use of devices for overhearing employees' business conversations may continue unimpeded. This practice is known as "service - observing".

    b. Excludes private communications systems operated by state correctional facilities. (To meet objections of the Department of Corrections)

    c. Excludes from the prohibition against manufacture or sale of eavesdropping devices, companies which sell such devices to friendly foreign governments, as approved by the U.S. Government.

    d. Other technical re-writing.

2. Amendments of June 13:

    a. Further excludes internal communications systems operated by <u>local</u> jails and correctional facilities.

    b. Broadens exemption from the prohibitions against wiretapping and eavesdropping which applies to law enforcement officers and agencies, by applying it to chiefs of police, etc.

c. One important amendment states that it shall not be unlawful for a private person to eavesdrop without consent of both parties if he has been threatened with extortion, kidnapping, bribery, robbery, burglary or making lewd phone calls, and he reasonably believes he is gathering evidence relative thereto.

3. Amendments of June 16:

a. Adds to the private person exemption in gathering evidence if threatened by a serious felony, to include any felony involving violence against the person (murder, mayhem, rape, etc.). This entire series of amendments was intended to insure that in crimes such as kidnapping, if the innocent parent delivers ransom to the kidnapper, he will not be guilty of a crime if he records his conversations with the alleged kidnapper.

b. Broadens the law enforcement exemption to include officers of the California Highway Patrol.

c. Other amendments double-joint with other bills: are technical and non-substantive.

EXHIBIT B

Sacramento, California
June 30, 1967


Mr. Charles L. Gould
Publisher, San Francisco Examiner
Fifth and Mission Streets
San Francisco, California

Dear Mr. Gould:

In reply to your editorial of June 29, 1967, concerning the anti-eavesdropping bill which I have introduced at this session of the Legislature, permit me to differ with your view that this legislation, Assembly Bill 860, "goes too far". This measure has been carefully drafted and studied by the Criminal Procedure Committee of the Assembly and the Senate Judiciary Committee. We have studiously avoided mass application of the proposed ban against invasions of the privacy of communications by exempting law enforcement officers, persons reporting violent crimes, and the justifiable use of wiretapping and eavesdropping devices by legitimate business interests.

Your editorial states that AB 860 "could be interpreted to extend to monitoring done in the business world to protect consumers". According to the attorneys for the Pacific Telephone Company, legislative committee lawyers and the State Legislative Counsel this is not the case. This legislation specifically exempts from the anti-eavesdropping ban any licensed telephone equipment regulated by the Public Utilities Commission. Under my bill, it would continue to be perfectly legal to monitor business calls, to insure proper service of customers by employees.

AB 860 would make unlawful clandestine overhearing, recording and eavesdropping upon an individual's private, confidential communications, an aim with which your editorial states you agree.

Californians today face unprecedented scientific and technological advances which have made possible the development of the most insidious miniaturized forms of eavesdropping and "bugging" devices. Our citizens must have the protection which AB 860 provides to insure their Fourth Amendment right "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures".

If an American citizen has the right, as I believe he does, to maintain his home inviolate as "his castle", should his right to privacy over his confidential communications be any less secure? I believe it should not and cannot. The intent and purpose of AB 860 is to provide that protection.

Sincerely,

Jesse M. Unruh
Speaker of the Assembly


JMU:bq

EXHIBIT C

DISTRICT OFFICE
417 SOUTH HILL, SUITE 403
LOS ANGELES, CALIFORNIA 90013
TEL.: 626-7943

SACRAMENTO ADDRESS
ASSEMBLY BOX 65
STATE CAPITOL
95814
ROOM 3104
TEL.: 445-3134

MEMBER CALIFORNIA LEGISLATURE
SIXTY-FIFTH ASSEMBLY DISTRICT
LOS ANGELES COUNTY

MEMBER:
BOARD OF REGENTS
UNIVERSITY OF CALIFORNIA
BOARD OF TRUSTEES
CALIFORNIA STATE COLLEGES
CALIFORNIA STATE DISASTER
COUNCIL



**Assembly California Legislature**

JESSE M. UNRUH
SPEAKER OF THE ASSEMBLY

Sacramento, California
July 31, 1967

Honorable Ronald Reagan
Governor
State of California
State Capitol
Sacramento, California

**24 HR. ACK. NECESSARY**

Re: Assembly Bill 860

Dear Governor:

      On July 28th the Legislature passed and sent to you for signature Assembly Bill 860, which I have authored, making major modifications in California's anti-wiretapping and anti-eavesdropping statutes. This legislation is the result of many months of study by legislative staff members, together with hours of exhaustive hearings by the Assembly Criminal Procedure and Senate Judiciary Committees, both chaired by experienced Republican legislators. The resulting bill represents an important advance in our individual privacy laws, which have not been overhauled since 1961. It was approved by substantial bipartisan votes in both houses of the Legislature.

      Assembly Bill 860 recodifies California penal law relating to invasions of the privacy of confidential communications so that all such provisions of law appear within Chapter 1.5 of Title 15 of Part 1 of the Penal Code, entitled "Invasion of Privacy". Heretofore these sections have been randomly scattered throughout the Code. The measure makes uniform the criminal penalties for illegal wiretapping and eavesdropping, at imprisonment in the county jail for one year or in state prison for three years, or a fine of $2,500, or both, for a first offense; and at imprisonment in state prison for as much as five years and/or a fine of $10,000 for any subsequent offenses. This represents substantially stiffened penalties for invasions of privacy.

In addition, violations of law in this area would be subject to civil enforcement by anyone who feels he has been injured by illegal wiretapping or eavesdropping. Injunctive relief, together with recovery of treble damages, would be available in civil suit to such an injured party. It was the judgment of the legislative committees which considered the measure that this enforcement device should be a powerful deterrent to those who wiretap illegally for profit.

The major strengthening of our wiretapping and eavesdropping laws contained in Assembly Bill 860 relates to the numbers of parties to a confidential conversation who must consent before that conversation may be legally overheard. Present law is weak in this regard, requiring merely that one party to the communication must consent to the overhearing. Assembly Bill 860 requires that all parties to such a conversation must consent before a legal wiretap or eavesdrop may be conducted. Thus, this bill insures that anything said in a confidential conversation which any one of the parties desires be kept between the parties must be kept private. Both Oregon and Maryland have long had two-party consent, privacy of communications laws, and these laws have worked well. Surely, a man's confidential communications are as sacrosanct as his right to privacy within his home. This inherent right is all that this bill seeks to protect.

It should be mentioned that Assembly Bill 860 has been written carefully so as to avoid any hardship upon law enforcement officers, who must employ listening devices in the apprehension of criminals. I have worked closely with the Attorney General's Office in drafting this legislation to insure this protection, and that office advises me that it fully supports Assembly Bill 860 as enacted by the Legislature.

Likewise, we have exempted from coverage under the measure normal business telephone monitoring, known as "service-observing", which is essential in modern business practices to insure employee efficiency. As written, Assembly Bill 860 is carefully directed only at clandestine wiretapping and eavesdropping, much of which now takes place in California for a variety of unjustifiable reasons.

Assembly Bill 860 contains one additional major improvement in our privacy laws. The measure would make manufacture, sale or possession of clandestine listening devices unlawful in this State. However, the necessary exceptions are made for law enforcement officers, official investigative agencies and the federal government.

Clearly, there is no need for the average citizen to possess these insidious devices which enable him to invade the privacy of his neighbors.

As it passed the Legislature, Assembly Bill 860 represents an important advance in California law protecting the inherent rights of our citizens to privacy in their personal affairs. It is far stronger than the laws of many states in this field, and much tougher than the proposed federal eavesdropping legislation. The bill has the strong support of a wide range of organizations and associations, together with that of the great majority of legislators. I strongly urge your approval of Assembly Bill 860.

Sincerely,

Jesse M. Unruh
Speaker of the Assembly

JMU:bq