**ORSHANSKY & YEREMIAN LLP**
Anthony J. Orshansky (SBN: 199364)
anthony@oyllp.com
9301 Wilshire Blvd., Suite 650
Beverly Hills, CA 90210
Telephone (818) 205-1212

*Attorneys for Plaintiffs Katie Knell, et al.*

*[Additional Plaintiff's Counsel on Signature Page]*

**REED SMITH LLP**
Abraham J. Colman, Esq. (SBN: 146933)
acolman@reedsmith.com
Felicia Y. Yu, Esq. (SBN: 193316)
fyu@reedsmith.com
Amir Shlesinger, Esq. (SBN: 204132)
ashlesinger@reedsmith.com
Janet M. Lee, Esq. (SBN: 251518)
jmlee@reedsmith.com
355 S. Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 457-8000
Facsimile: (213) 457-8080

*Attorneys for Defendant FIA Card Services, N.A.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE KNELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ENCORE RECEIVABLE MANAGEMENT, INC., AND FIA CARD SERVICES, N.A.<br><br>Defendant. | Case No.: 3:12-cv-00426-AJB-WVG<br><br>Consolidated Case No.: 3:13-cv-01653-AJB-WVG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:  JANUARY 23, 2014<br>TIME:   2:00 P.M.<br>COURTROOM:  3B<br><br>HON. ANTHONY J. BATTAGLIA |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................1

II.  STATEMENT OF CASE ......................................................2

   A. PROCEDURAL POSTURE. ...............................................2

   B. PLAINTIFFS ALLEGE THAT DEFENDANTS VIOLATED CALIFORNIA PENAL
      CODE § 630 ET SEQ. ...................................................3

   C. DEFENDANTS HAVE POLICIES AND PROCEDURES IN PLACE TO DISCLOSE
      CALL RECORDING AND MONITORING ON ALL CALLS THAT ARE
      RECORDED AND MONITORED AND ACCORDINGLY DENY PLAINTIFFS'
      ALLEGATIONS ............................................................4

III. THE SETTLEMENT ..........................................................5

   A. NEGOTIATION PROCESS ................................................5

   B. THE SETTLEMENT CLASS ...............................................6

   C. SETTLEMENT PAYMENT .................................................6

   D. CLASS NOTICE .........................................................7

   E. SCOPE OF RELEASE ....................................................7

   F. OPPORTUNITY TO OPT OUT AND OBJECT ...............................7

   G. TERMINATION OF SETTLEMENT .........................................7

   H. CLASS REPRESENTATIVES' APPLICATION FOR INCENTIVE AWARD .........8

   I. CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND
      EXPENSES ..............................................................8

   J. CY PRES DISTRIBUTION ................................................8

IV.   LEGAL ANALYSIS ................................................................................9

   A. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23. ......9

      1. *The members of the Class are sufficiently numerous.*.....................10

      2. *The requirement of commonality is satisfied.* ...............................11

      3. *The requirement of typicality is satisfied.* .....................................12

      4. *The requirement of adequate representation is satisfied.*..............12

      5. *The Actions meet the requirements of Rule 23(b)(3).* ....................13

   B. THE PARTIES FACE SUBSTANTIAL RISKS IN PURSUING FURTHER
      LITIGATION. ....................................................................................14

      1. *The class size is difficult to ascertain.*............................................15

      2. *Absent this Class Settlement, each Class Member, including
      Plaintiffs, would bear the burden of establishing that each recorded
      and/or monitored call constituted a confidential communication under
      California Penal Code § 632, requiring individual review.* ..............15

   C. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED
      SETTLEMENT. ...................................................................................16

      1. *The Settlement is a product of arms' length negotiations.*..............17

      2. *The Settlement is fundamentally fair, reasonable and adequate* ....19

   D. THE PROPOSED PLAN OF NOTICE SATISFIES THE REQUIREMENTS OF
      RULE 23 AND DUE PROCESS. ..............................................................20

   E. PROPOSED PRELIMINARY SCHEDULE...................................................22

V.   CONCLUSION ...................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

*Abels v. JBC Legal Group, P.C.,*
    227 F.R.D. 541 (N.D. Cal. 2005)..................................................13

*Acosta v. Trans Union LLC,*
    234 F.R.D. 377 (C.D. Cal. 2007)..................................................17

*Amchem Prods. Inc. v. Windor,*
    521 U.S. 591 (1997)...........................................................9, 14

*Beck-Ellman v. Kas USA, Inc.,*
    2013 WL 1748729 (S.D. Cal. 2013)..............................................20

*Bert v. AK Steel Corp.,*
    2008 WL 4693747 ............................................................18

*Blackie v. Barrack,*
    524 F.2d 891 (1975)...........................................................11

*Bullock v. Administrator of Estate of Kircher,*
    84 F.R.D. 1 (D.N.J. 1979)......................................................17

*Carrizosa v. Stassinos,*
    669 F.Supp.2d 1081 (N.D. Cal. 2008)...........................................13

*Celano v. Marriott Int'l, Inc.,*
    242 F.R.D. 544 (N.D. Cal. 2007)..................................................10

*Consolidated Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) ....................................................10

*De La Fuente v. Stokely-Van Camp, Inc.,*
    713 F.3d 225 (9th Cir. 1983) ................................................12

*Dennis v. Kellogg Co.,*
    2010 WL 4285011 (S.D. Cal. 2010)..............................................18

*Dukes v. Wal-Mart, Inc.,*
    774 F.3d 1214 (9th Cir. 2007) .............................................11, 12

*Faulkner v. ADT Sec. Services, Inc.*,
    2013 WL 174368 ...............................................................................................16

*Flanagan v. Flanagan*,
    27 Cal. 4th 766-77 (2002) .................................................................................15

*Gallucci v. Boiron, Inc.*,
    2012 WL 5359485 (S.D. Cal. 2012).................................................................20

*General Tel. Co. v. Falcon*,
    457 U.S. 147 (1982)....................................................................................11, 13

*Hammon v. Barry*,
    752 F. Supp. 1087 (D.D.C. 1990) .....................................................................19

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................11, 17

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................................12

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ............................................................................10

*Hunt v. Check Recovery Systems, Inc.*,
    241 F.R.D. 505 (N.D. Cal. 2007)................................................................13, 21

*Ikonen v. Hartz Mountain Corp.*,
    122 F.R.D. 258, 261 (S.D. Cal. 1988) ..............................................................21

*In re Armored Car Antitrust Litigation*,
    472 F. Supp. 1357 (N.D. Ga. 1979) ..................................................................19

*In re Chicken Antitrust Litigation*,
    560 F. Supp. 957 (N.D. Ga. 1980).....................................................................19

*In re NASDAQ Market Makers Antitrust Litigation*,
    176 F.R.D. 99 (S.D.N.Y. 1997) .....................................................................9, 17

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
    204 F.R.D. 359, 380 (N.D. Cal. 2001)....................................................17, 18, 19

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................ 14

*In re Syncor ERISA Litig.*
    516 F.3d 1095 (9th Cir. 2008) ................................................................ 17

*In re Tableware Antitrust Litigation*,
    484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007) ........................................ 21

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    2012 WL 253298 (N.D. Cal. 2012) ........................................................ 21

*In re Traffic Executive Association-Eastern Railroad*,
    627 F.2d 631 (2d. Cir. 1980) ................................................................ 17

*In re United Energy Corp. Solar Power Modules Tax Shelter Ivs. Sec. Litig.*,
    995 F.2d 1628 (9th Cir. 1992) ................................................................ 12

*Larson v. Sprint Nextel Corp.*,
    2010 WL 239934 ................................................................................... 18

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) ............................................................ 10

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507, 512 (9th Cir. 1978) ........................................................ 12

*Liebman v. J. W. Petersen Coal & Oil Co.*,
    73 F.R.D. 531, 535 (N.D. Ill. 1973) ...................................................... 18

*Lightbourn v. County of El Paso, Tex.*,
    118 F.3d 421 (5th Cir. 1998) ................................................................ 12

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,
    834 F.2d 667 (7th Cir. 1987) ................................................................ 19

*Mendoza v. United States*,
    623 F.3d 1338, 1351 (9th Cir. 1980) .................................................... 22

*Milliron v. T-Mobile USA, Inc.*,
    2009 WL 3347562 (D.N.J. 2009) .......................................................... 18

*Milstein v. Huck*,
    600 F. Supp. 245 (E.D.N.Y. 1984) ..........................................................17

*Morgan v. U.S.*,
    60 Fed. Appx. 180 (9th Cir. 2003)............................................................16

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)..............................................................................20, 22

*Nelson v. Bennett*,
    662 F. Supp. 1325 (E.D. Cal. 1987) ........................................................10

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .............................................................14, 17

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*,
    323 F. Supp. 364, 378 (E.D. Pa. 1970) ...................................................23

*Priddy v. Edelman*,
    883 F.2d 438 (6th Cir. 1989) ...................................................................19

*Rosario v. Livaditas*,
    963 F.2d 1013 (7th Cir. 1992) .................................................................13

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
    2010 WL 2486346 (C.D. Cal. 2010) ........................................................18

*Satchell v. Federal Express Corp.*,
    2007 WL 1114010 (N.D. Cal. 2007) ........................................................17

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985)..............................................................12

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,
    79 F.R.D.) ................................................................................................19

*Utility Reform Project v. Bonneville Power Admin*,
    896 F.2d 437 (9th Cir. 1989) ...................................................................14

*Wyatt v. Creditcare, Inc.*,
    2005 WL 2780684 (N.D. Cal. 2005) ........................................................13

1

**STATUTES**

2
California Penal Code § 630 ................................................................passim

3
California Penal Code § 632................................................................passim

4
California Penal Code § 632(a) ...............................................................15

5
California Penal Code § 632(c) ........................................................15, 16

6
California Penal Code § 632.7.......................................................3, 14, 16

7
California Penal Code § 1542 .....................................................................7

8
Fed. R. Civ. P. 23 .............................................................................passim

9
Fed. R. Civ. P. 23(a) ................................................9, 10, 11, 12, 13

10
Fed. R. Civ. P. 23(a)(1) .............................................................................10

11
Fed. R. Civ. P. 23(a)(2) .............................................................................11

12
Fed. R. Civ. P. 23(a)(3) .............................................................................11

13
Fed. R. Civ. P. 23(a)(4) .............................................................................12

14
Fed. R. Civ. P. 23(b) .............................................................9, 13, 14, 20

15
Fed. R. Civ. P. 23(b)(3)..........................................................9, 13, 14, 20

16
Fed. R. Civ. P. 23(c)(2)..................................................................20, 21

17
Fed. R. Civ. P. 23(c)(2)(B).............................................................20, 21

18
Fed. R. Civ. P. 23(e) ...........................................................8, 9, 20, 22

19
Fed. R. Civ. P. 23(e)(2) ..............................................................................9

20
**OTHER AUTHORITY**

21
2 *McLaughlin on Class Actions* (8th Ed.) § 6:7 ....................................18

22
Manual for Complex Litigation (3rd ed. 1997) § 30.41...........................17

23
Manual for Complex Litigation (3rd ed. 1995) § 30.45 .........................16

24
Manual for Complex Litigation (4th ed. 2004) § 21.632 ........................9

25
Manual for Complex Litigation (4th ed. 2004) § 21.311 .......................21

26
Newberg & Conte, *Newberg on Class Actions* (Fourth Ed. 2002) § 8.32...........20

27
Newberg & Conte, *Newberg on Class Actions* (Fourth Ed. 2002) § 11.25...........17

28

## I.   **INTRODUCTION**

In the consolidated class actions, *Knell, et al. v. FIA Card Services*, Case No. 3:12-cv-00426-AJB-WVG, and *Byanooni, et al. v. Bank of America Corporation, et al.*, Case No. 3:13-cv-01653-AJB-WVG, named plaintiffs Katie Knell and Abdullah Byanooni ("Plaintiffs") assert that Defendants FIA Card Services, N.A. ("FIA"), Bank of America, N.A. ("BANA"), and Bank of America Corporation (collectively, "Defendants") violated California Penal Code § 630 et seq. by monitoring and/or recording telephonic communications between the Parties without consumers' knowledge or consent.  Plaintiffs and Defendants are collectively referred to herein as the "Parties."

Since the underlying actions were filed the Parties have engaged in extensive motion practice and discovery, all the while disputing the merits of the opposing Parties' contentions.  To establish their respective claims and defenses, the Parties engaged in motion practice with respect to the pleadings as well as informal discovery before submitting mediation briefs in connection with an all-day mediation that took place on May 1, 2013.  Furthermore, the Parties also engaged in numerous telephone conferences, meetings and written communications regarding the claims at issue in the litigation, the deposition of FIA's person most knowledgeable, and written discovery in the form of a declaration from FIA's person most knowledgeable regarding FIA's call recording practices and disclosures.  Through this strenuous litigation, the Parties believe that they are fully apprised of the relative strengths and weaknesses of each other's claims and defenses and the potential risk to each party in pursuing further litigation.

Pursuant to the terms of the Settlement Agreement and Release ("Settlement Agreement" or "Settlement"), attached as Exhibit 5 to the Declaration of Abbas Kazerounian, the Parties now jointly request this Court to:

1.   Certify a class for settlement purposes only;

2.   Appoint Abbas Kazerounian of the Kazerouni Law Group, APC;

Joshua B. Swigart of Hyde & Swigart; and Anthony J. Orshansky of Orshansky & Yeremian LLP as Class Counsel;

3. Appoint Plaintiffs as the Class Representatives;

4. Approve the proposed plan of providing Notice to the Class;

5. Approve the proposed preliminary schedule for providing notice to the class and for class members to submit requests for exclusion or objections to the proposed Settlement.

In the event that the Settlement is not approved, the Parties agree that any agreement and order certifying a settlement class shall be null and void and the Parties shall return to their respective positions at the time this Motion was submitted to the Court for approval.

## II.  STATEMENT OF CASE

### A.  PROCEDURAL POSTURE

Plaintiff Knell filed an action in the United States District Court for the Southern District of California on February 16, 2012 against originally named defendant Encore Receivable Management, Inc., captioned *Katie Knell, et al. v. Encore Receivable Mgmt., Inc. et al.*, Case No. 3:12-cv-00426-AJB-WVG (the "*Knell* Action").  The Parties subsequently dismissed Encore Receivable Management, Inc. without prejudice, and FIA Card Services, N.A. was named as the sole defendant in the First Amended Complaint ("FAC") filed on June 25, 2012.  FIA filed a motion to dismiss Knell's FAC on September 28, 2012.  [Dkt. 22.] Following the Court's order granting in part and denying in part FIA's motion to dismiss Knell's FAC, Knell filed a Second Amended Complaint ("SAC") on April 22, 2013.  [Dkt. 30, 41.]

The putative class action SAC in the *Knell* Action asserts one cause of action for Invasion of Privacy: Violation of Penal Code Section 632. The SAC alleges that FIA violated California Penal Code Section 632 of California's Invasion of Privacy Act ("CIPA") by recording a call with customers without obtaining the

1  their consent to do so.  FIA filed an Answer to the SAC on May 9, 2013.  [Dkt.

2  43.]

3          On August 17, 2012, Plaintiff Byanooni filed an action in San Francisco

4  Superior Court against Bank of America Corporation, BANA, and FIA captioned

5  *Abdullah Byanooni v. Bank of America Corporation et al.*, Case No. CGC-12-

6  523553 (the "*Byanooni* Action").  Defendants removed the action to the United

7  States District Court for the Northern District of California on October 26, 2012,

8  and it was assigned Case No. 3:12-cv-05483-LB.  [Dkt. 1.]  On July 11, 2013, the

9  *Byanooni* Action was transferred to the Southern District of California and

10  assigned Case No. 3:13-cv-01653-AJB-WVG.

11          The *Byanooni* Action asserts causes of action for (1) Unlawful Recording

12  and Interception of Communications (Violation of California Penal Code § 632.7);

13  and (2) Unlawful Recording of and Eavesdropping upon Confidential

14  Communications (Violation of California Penal Code § 632).  The complaint

15  alleges that Defendants violated CIPA, California Penal Code, Section 630, *et seq.*,

16  by recording and/or monitoring calls with the Named Plaintiff without obtaining

17  the Named Plaintiff's consent to do so.

18          On July 24, 2013, the *Byanooni* Action was transferred to this Court

19  pursuant to the low-number rule, and on August 14, 2013, the *Byanooni* Action

20  was consolidated with the *Knell* Action.  (The *Byanooni* and *Knell* actions are

21  collectively referred to herein as the "Actions.")

22  **B.  PLAINTIFFS ALLEGE THAT DEFENDANTS VIOLATED CALIFORNIA PENAL**

23      **CODE § 630 ET SEQ.**

24      Plaintiffs allege that they participated in numerous telephone calls with

25  Defendants about their sensitive financial affairs from landlines and cellular

26  telephones within California.  (Knell SAC, Dkt. No. 41, ¶¶ 9, 10; Byanooni Compl.,

27  Dkt. No. 1, ¶¶ 21, 22.)  During one of their calls Plaintiffs each became aware that

28  Defendants were recording their calls, though they allege that they have never given

Defendants consent to do so.  (Knell SAC ¶¶ 10, 13; Byanooni Compl. ¶ 23.)
Plaintiffs alleged that Defendants had a policy and practice of recording telephonic
communications with California consumers without consumers' knowledge and/or
consent.  (Knell SAC ¶ 16; Byanooni Compl. ¶¶ 24, 26.)  Thus, Plaintiffs alleged
that Defendants' violated California Penal Code § 630 et seq.  (*Id.*, *passim.*)

C. **DEFENDANTS HAVE POLICIES AND PROCEDURES IN PLACE TO DISCLOSE
CALL RECORDING AND MONITORING ON ALL CALLS THAT ARE
RECORDED AND MONITORED AND ACCORDINGLY DENY PLAINTIFFS'
ALLEGATIONS.**

Defendants contend that during the class period to the present, FIA obtains
consent to record telephone calls with its customers through its Credit Card
Agreements with its customers, which include the following disclosure regarding
recording and/or monitoring of calls:

> **WE MAY MONITOR AND RECORD TELEPHONE CALLS**
> You consent to and authorize FIA Card Services, any of its affiliates, or its
> marketing associates to monitor and/or record any of your telephone
> conversations with our representatives or the representatives of any of those
> companies.

(emphasis in original).  (*See* the Declaration of Abbas Kazerounian, Exhibit 4
(Declaration of Jason Pettit, ¶ 5).)  In addition, FIA has ensured consent to record
calls by implementing an automated solution for call recording and monitoring
disclosures on inbound calls.  The automated solution informs inbound callers—
before those callers are put through to a customer service or other representative at
FIA—that their calls may be recorded or monitored.  (Pettit Decl., ¶ 6.)  Further,
for outbound calls, FIA representatives are required and trained to provide a verbal
disclosure notifying the other party to the call that the call may be recorded or
monitored.  (Pettit Decl., ¶ 7.)  Defendants further contend that in any event
Plaintiffs had no reasonable expectation of privacy in their calls with FIA given
their previous experiences with calls with FIA, as well as the other circumstances

of the subject calls, thus failing to satisfy a threshold requirement of California Penal Code Section § 630 et seq.  (Pettit Decl., ¶ 5.)  Accordingly, Defendants deny that they committed any wrongful act or violated any law or duty and deny that Plaintiffs, or the class they seek to represent, are entitled to any form of damages or relief based on the conduct alleged in the Actions.

In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Actions and they are prepared to defend the Actions.  The Settlement Agreement, and all related documents, shall not be construed as any admission or concession by Defendants of any fault, liability, wrongdoing or damage whatsoever.  Preliminary certification of the proposed class shall not be deemed a concession that certification of a litigation class is appropriate, nor would Defendants be precluded from challenging class certification in further proceedings in the Actions or in any other action if the Settlement Agreement is not finalized or finally approved.

## III. <u>THE SETTLEMENT</u>

### A. NEGOTIATION PROCESS

For nearly a year the Parties actively litigated the Actions. Among other things, the Parties engaged in copious discovery, dispositive motion practice, and informal settlement discussions leading up to the mediation on May 1, 2013, with The Honorable Edward A. Infante (Ret.).  During the mediation the parties discussed all aspects of the case, including the risks of litigation and the risks to both parties of proceeding with a motion for class certification, as well as the law relating to the alleged claims, and exchanged further information.  As a result of an all-day mediation session the Parties were able to reach an agreement on the amount of the Settlement.  The Parties then continued negotiations about the many details of the Settlement in good faith for several months and were eventually able to agree on the terms of a settlement agreement.  The current Joint Motion is being filed shortly thereafter.

## B.  THE SETTLEMENT CLASS

The "Class" means the persons in the following definition:

> All persons who, on or after February 16, 2011, through the date of preliminary approval, made a telephone call to or received a telephone call from FIA while within the State of California that was recorded and/or monitored.

(Members of the Class are referred to herein as "Class Members.")

Based upon Defendants' investigation into the matter, the total number of potential Class Members in the Class is estimated to be approximately 3,655,577 given that FIA only records and/or monitors approximately 15% of calls, with the exception of fraud and collections-related calls, which have all been recorded and/or monitored since approximately November of 2012.  (*See* Declaration of Abbas Kazerounian, Exhibit 3 (Hiler Deposition Transcript, p. 20); Exhibit 4 (Pettit Decl., ¶ 4.))  The process and methodology used to arrive at the estimated number of potential Class Members were verified during discovery, including the deposition of FIA's person most knowledgeable, Matthew Avery Hiler ("Hiler"), to confirm the methodology used by Defendants in estimating the potential class size, as well as the Declaration of FIA witness Jason Pettit regarding FIA's call recording practices. (*Id*.)  All that is needed for a Class Member to file a claim is to submit a completed claim online or mail in a completed claim form by the date specified in the notice. (Declaration of Abbas Kazerounian, Exhibit 5 (Settlement Agreement, page 5, ¶ 11.2.))

## C.  SETTLEMENT PAYMENT

Under the Settlement, Defendants agree to establish an all-in Settlement Fund in the amount of $2,750,000.00 within 30 days of Final Judgment.  (Settlement Agreement, page 3, ¶ 3).  This number represents the maximum amount payable by Defendants in Settlement of the Actions.  (*Ibid*.)

///

### D.  CLASS NOTICE

The Parties propose using The Garden City Group, Inc. ("Claims Administrator"), a third-party claims administrator, to facilitate the administration of all claims in this matter.  The Claims Administrator's responsibilities will include, but are not limited to, providing publication notice, fielding inquiries related to the Settlement, and issuing the Settlement payments.  (Settlement Agreement, ¶ 6.3.)

The Claims Administrator will also maintain a Settlement website as well as a toll-free call center from which Class Members can obtain further information regarding the Settlement.

### E.  SCOPE OF RELEASE

The Parties desire and seek Court approval of the Settlement and a final judgment and order dismissing with prejudice the claims of Plaintiffs and the Class Members as set forth in this Settlement Agreement.  The scope of the release by all Class Members (other than those who exclude themselves from the Settlement) covers any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands, of whatever character, known or unknown, arising out of, relating to, or in connection with, the operative complaints in the *Knell* Action and the *Byanooni* Action, the claims asserted in the Actions, the Released Parties' recording and/or monitoring of calls, and the administration of this Settlement.  (*See* Settlement Agreement at page 8, ¶ 17.)  The release covers known and unknown claims, including a waiver of California Civil Code Section § 1542.  (*Ibid.*)

### F.  OPPORTUNITY TO OPT OUT AND OBJECT

Under the terms of the proposed Settlement, Class Members will have the right to opt out of the Settlement or object to its terms.  (See Settlement Agreement, pp. 5-6, ¶¶ 12 -13.)  The deadline for doing so is within 90 days of the completion of notice. (Settlement Agreement, page 6, ¶ 13.1)  Class Members will be informed of these rights through the Class Notice, the Settlement Website, the Publication

Notice, and information available by calling the toll-free number. (*See id.* at ¶ 9.)

### G.  TERMINATION OF SETTLEMENT

If 1,000 or more Class Members opt out of the Settlement Agreement by timely submitting an Exclusion Request, then Defendants, in their sole discretion, shall have the right to terminate the Settlement.  In the event that the Settlement is terminated pursuant to this Section, the Parties will be returned to the status quo ante as if no Settlement had been negotiated or entered into.  (Settlement Agreement, p. 6, ¶ 12.4.)

### H.  CLASS REPRESENTATIVES' APPLICATION FOR INCENTIVE AWARD

Plaintiffs will apply to the Court for an incentive award of up to $5,000.00 each for their service as Class Representatives in this action.  Any incentive award approved by the Court will be paid by the Claims Administrator out of the Settlement Fund established by Defendants before payments to other Class Members are made. (*See* Settlement Agreement, p. 4, ¶ 7.)

### I.  CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS AND EXPENSES

Class Counsel shall move the Court for an award of attorney's fees ("Motion for Fees") not to exceed $687,500 and costs not to exceed $25,000.  (Settlement Agreement, p. 3, ¶ 5.)  Any award of fees and costs approved by the Court shall be paid from the Settlement Fund.  Defendants shall not object to Class Counsel's Motion for Fees so long as the total amounts requested by Class Counsel do not exceed $687,500 for attorneys' fees and $25,000 for costs.  (*Id.*)  Court approval of Class Counsel's attorney's fees and costs is not a condition of the Settlement.  (*Id.*)

### J.  CY PRES DISTRIBUTION

If there are any unclaimed funds or any funds from uncashed settlement checks, Class Counsel will file a brief in support and recommendation of one or more *cy pres* recipients, as agreed by Defendants, which will then require approval by the Court.

# IV. **LEGAL ANALYSIS**

Rule 23(e) requires court approval for the settlement of class claims. Approval of a class settlement occurs in two steps:

First, the Court conditionally certifies the class and grants preliminary approval of the settlement.

Second, after the settlement is preliminarily approved and notice of the settlement is provided to the class, the Court conducts a fairness hearing to determine if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation (4th ed. 2004) § 21.632; *In re NASDAQ Market Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

The instant Motion is submitted in support of the first step of the settlement approval process.

## A. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23.

Before granting preliminary approval of a settlement, the Court must determine that the proposed class can be certified for settlement purposes. See *Manual for Complex Litigation* (4th Ed. 2004) § 21.632; *Amchem Prods. Inc. v. Windor*, 521 U.S. 591, 620 (1997). Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class. All criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes.

Certification is appropriate where the proposed class and the proposed class representatives meet four prerequisites of Rule 23(a) – (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. In addition, one of the three requirements of Rule 23(b) must also be met. Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Parties agree that the requirements for class certification under Rule 23 have been met for the sole purpose of effectuating settlement of this disputed class claim.  Nothing in regard to the settlement of this disputed claim shall be construed as an admission that Plaintiffs have satisfied the substantive requirements of Rule 23.[1]  Furthermore, the treatment of this matter as a class action for purposes of settlement shall not be admissible to support class certification in any other matter. In the event that the Settlement is not approved, the Parties agree that any agreement and order certifying a settlement class shall be null and void and the parties shall return to their respective positions at the time this Motion was submitted to the Court for approval.

## 1. *The members of the Class are sufficiently numerous.*

The first requirement for maintaining a class action under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1).  Generally, the numerosity requirement is satisfied when the class is comprised of 40 or more members. *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).[2]  In this case, the class has been estimated to potentially consist of approximately 3,655,577 Class Members as of the date of this Motion submission.  FIA arrived at the class size based on the estimated number of calls made to or from California area codes and recorded from one year prior to the filing date of the *Knell* Complaint to the filing date of the *Knell* complaint.  (*See* Hiler's Deposition Transcript attached as Exhibit 3 to the Declaration of Abbas

---

[1] In evaluating a settlement in this type of complex litigation, courts have long recognized that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (footnote omitted).  Thus, compromise is particularly appropriate. *Nelson v. Bennett*, 662 F. Supp. 1325, 1334 (E.D. Cal. 1987).

[2] *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) ("Generally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members"); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed at level of 40 members).

Kazerounian, 18:17-20:10.)  Based upon FIA's internal investigation, this putative class action far exceeds the numerosity threshold many times over.   Thus, the proposed class meets the first prerequisite of Rule 23 for settlement purposes.

### 2. *The requirement of commonality is satisfied.*

The second prerequisite to class certification is the existence of questions of law or fact that are common to the class.  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has made clear that the commonality requirement is to be "construed permissively." *Dukes v. Wal-Mart, Inc.*, 774 F.3d 1214, 1225 (9th Cir. 2007).  Commonality can be established by showing "that the class is united by a common interest."  See *Blackie v. Barrack*, 524 F.2d 891, 901 (1975) (holding that "slight differences in class members' positions" will not defeat commonality).  The existence of shared legal issues" will satisfy the commonality requirement even if there are "divergent factual predicates."  *Dukes*, 774 F.3d at 1225.  Because the test of commonality is qualitative rather than quantitative, "one significant issue common to the class may be sufficient to warrant certification."  *Ibid*.[3]

Here, because the Class is defined as "All persons who, on or after February 16, 2011 through the date of preliminary approval, made a telephone call to or received a telephone call from FIA while within the State of California that was recorded and/or monitored," the significant common issues presented are whether each of the Class Members' calls were recorded and/or monitored, and, if so, whether the call recording/monitoring disclosure was provided on each of the recorded/monitored calls.  Based upon this conduct, Class Members all seek the same remedy as permitted by the Penal Code.   Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class.  See *Hanlon,* 150 F. 3d at 1019-20.  Therefore, the second prerequisite of Rule 23 is satisfied for settlement purposes.

---

[3] See also *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) ("Class relief is 'particularly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class."

### 3. *The requirement of typicality is satisfied.*

The third prerequisite to class certification is that the named plaintiff's claims are typical of the class.  Fed. R. Civ. P. 23(a)(3).  A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.3d 225, 232 (7th Cir. 1983).  The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).  See also *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1998); *In re United Energy Corp. Solar Power Modules Tax Shelter Ivs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988).

In this case Plaintiffs' claims arise from the alleged unlawful recording of confidential telephonic communications by FIA.  Since each Class Member was also unlawfully recorded, there is a unity of interest between Plaintiffs and the Class Members that Plaintiffs seek to represent.  Stated differently, the violation of Penal Code § 630 et seq. alleged by Plaintiffs is the same violation alleged by the Class Members.  Therefore, Plaintiffs' claims are typical of the claims of the class.

### 4. *The requirement of adequate representation is satisfied.*

The final requirement of Rule 23(a) is that the representative plaintiff will fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a)(4).  "This factor requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and that plaintiffs are represented by qualified and competent counsel." *Dukes*, 509 F.3d at 1185.[4]

///

---

[4] See also *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, Plaintiffs have the same interests as the Class Members that Plaintiffs seek to represent because this action is based upon the same alleged illegal conduct of FIA; namely, the undisclosed recording of confidential telephonic communications.

Furthermore, Plaintiffs are represented by counsel who are qualified in class action litigation and have had extensive experience in consumer protection class action lawsuits.  *Carrizosa v. Stassinos*, 669 F. Supp. 2d 1081 (N.D. Cal. 2008); *Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505 (N.D. Cal. 2007); *Wyatt v. Creditcare, Inc.*, 2005 WL 2780684 (N.D. Cal. 2005); and, *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005).  (*See* Declarations of Anthony J. Orshansky and Abbas Kazerounian, filed concurrently herewith.)  Thus, Plaintiffs and Plaintiffs' counsel adequately represent the class.

### 5.  *The Actions meet the requirements of Rule 23(b)(3).*

Once the four requirements of Rule 23(a) are met, "the potential class must also satisfy at least one provision of Rule 23(b)."  *Rosario*, 963 F.3d at 1017; see also *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).  Rule 23(b)(3) states that a class may be certified when "questions of law or fact common to class members predominate over any questions affecting only individual members, and [...] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The common issue presented in this action is whether FIA's recording of Plaintiffs, and the Class Members, violates Penal Code § 630 et seq.  Because this action is predicated on the same conduct, this common issue predominates over any individual issue.

Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because FIA recorded approximately 3,655,577 inbound and outbound calls with California area codes for the one year period preceding the filing date of the *Knell* complaint.  By utilizing the class-action

vehicle, relief may be provided to Class Members without the need for numerous separate trials on the same facts. Hence, a class action will achieve economies of time, effort, and expense as well as promote uniformity of decision as to persons similarly situated.

Because this is a settlement class, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

Accordingly, the Parties stipulate, solely for the purposes of this Settlement, that the class is suitable for certification for settlement purposes. Thus, the Parties request that the Court certify the settlement class pursuant to Rule 23(b)(3) for purposes of granting preliminary approval of the settlement.[5]

## B. THE PARTIES FACE SUBSTANTIAL RISKS IN PURSUING FURTHER LITIGATION.

In litigating this matter, Plaintiffs identified significant burdens that each Class Member would bear in the event that the Settlement is not approved. These challenges include the difficulties in ascertaining the class size and determining whether Defendants violated Sections 632 and Section 632.7 as to each Class Member. These significant risks make the global class settlement obtained by Plaintiffs all the more beneficial to the Class Members while also providing finality to the situation for Defendants.

///

---

[5] As a matter of public policy, settlement is a strongly favored method for resolving disputes. See *Utility Reform Project v. Bonneville Power Admin.* 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982). As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

1    **1.  *The class size is difficult to ascertain*.**

2         As discussed above, approximately 3,655,577 consumers potentially fit within

3    the class definition.    However, Defendants' witness Mr. Hiler testified that

4    establishing the exact number of violations would be impossible.  (*See* Hiler

5    Deposition Transcript attached as Exhibit 3 to the Declaration of Abbas

6    Kazerounian, p. 28, ll.13-16.)  As of February 2011, FIA's policy was to record

7    approximately 15 percent of inbound and outbound calls.  (Hiler Depo. 13:3-7.)

8    During that timeframe the recordings were only maintained for roughly 45 days.  (*Id*.

9    at 24:7-18.)  Without the actual recordings, it is impossible to ascertain who was

10   recorded, much less who received the recording disclosure and who did not.  In order

11   to avoid protracted further litigation, Defendants have agreed to settle these disputed

12   claims.  Thus, Plaintiffs request this Court grant preliminary approval of the class-

13   action Settlement.

14        **2.  *Absent this Class Settlement, each Class Member, including***

15        ***Plaintiffs, would bear the burden of establishing that each***

16        ***recorded and/or monitored call constituted a confidential***

17        ***communication under California Penal Code § 632, requiring***

18        ***individual review.***

19        Plaintiffs in both *Knell* and *Byanooni* alleged a cause of action for violation of

20   California Penal Code § 632, which provides, in relevant part, that "[e]very person

21   who, intentionally and without the consent of all parties to a confidential

22   communication, by means of any electronic device…records the confidential

23   communication" violates the statute.   Cal. Pen. Code § 632(a).   The term

24   "confidential communication" includes only communication "carried on in

25   circumstances as may reasonably indicate that any party to the communication

26   desires it to be confined to the parties" and expressly excludes communications in

27   which the parties "may reasonably expect that the communication may be overheard

28   or recorded."  Cal. Pen. Code § 632(c).

As the statute makes clear, a party's subjective expectation is not enough. The "[a]pplication of the statutory definition of 'confidential communication' turns on the reasonable expectations of the parties judged by an objective standard…." *Flanagan v. Flanagan*, 27 Cal.4th 766, 776-77 (2002) (requiring "objectively reasonable expectation" that conversation is not being recorded).

In determining whether each recorded and/or monitored call was a "confidential communication," each Class Member would need to present evidence of the circumstances surrounding each call, as several courts have held. *See, e.g.*, *Faulkner v. ADT Sec. Services, Inc.*, --- F.3d ----, 2013 WL 174368, *3 (9th Cir. 2013) (noting that "too little is asserted in the complaint about the particular relationship between the parties, and the particular circumstances of the call, to lead to the plausible conclusion that an objectively reasonable expectation of confidentiality would have attended such a communication."); *Morgan v. U.S.*, 60 Fed.Appx. 180, 182 (9th Circ. 2003) ("affirming dismissal of Section 632 claim, holding "that statute specifically allows the recording of public conversations that may be reasonably expected to be overheard.") (citing Cal. Penal Code § 632(c)).

Defendants contend that Plaintiffs, as well as many other Class Members, would be unable to meet the substantial burden of demonstrating that the circumstances of each recorded and/or monitored call support a finding of confidentiality such that California Penal Code § 632 even applies. (The *Byanooni* action also asserted a claim under California Penal Code § 632.7, for which there is no requirement that surreptitiously recorded conversation be confidential, although Defendants contend that the requirements of that claim were also not met.)

## C. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT.

Once a settlement class is certified, the Court examines whether to preliminarily approve the settlement. At the preliminary approval stage, the Court need only consider whether the proposed class action settlement is "within the range of

possible approval" and thus may be submitted to members of the prospective class for their acceptance or rejection. *See* Manual for Complex Litigation § 30.45 (3rd ed. 1995). This is different from the ultimate fairness determination for final approval of the settlement. Rather, at this preliminary juncture, the inquiry is limited to whether to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Ibid*. The Court should grant preliminary approval if the proposed settlement appears to be "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Market Makers*, 176 F.R.D. at 102.[6]

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a settlement is negotiated at arms' length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Cal. 2001).[7]

---

[6] A court should generally grant preliminary approval and direct that notice of the settlement and fairness hearing be disseminated. See e.g., Newberg & Conte, *Newberg on Class Actions* (Fourth Ed. 2002) § 11.25 pp.38-39, citing *Manual for Complex Litigation*, 3d (1997) § 30.41; see also, *In re Traffic Executive Association-Eastern Railroad*, 627 F.2d 631, 634 (2d Cir. 1980) (noting preliminary approval at more requires a determination that there is "probable cause" to submit the settlement proposal to class members and hold a full-scale fairness hearing); *Acosta v. Trans Union LLC*, 234 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out"); *Satchell v. Federal Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. 2007) (granting preliminary approval because proposed settlement appeared to be the result of arm's length negotiations, non-collusive, free of "obvious defects" and "within the range of possible settlement approval").

[7] Courts consistently find that "[t]he expense and possible duration of the litigation are major

---

**1.** ***The Settlement is a product of arms' length negotiations.***

This Settlement was reached by experienced counsel on both sides following discovery and non-collusive negotiations facilitated by The Honorable Edward A. Infante (Ret.).  As such, the Settlement is entitled to a presumption of fairness.  *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 380.  See also *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (approving a settlement after a one-day mediation before a retired federal judge and noting that "the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties (emphasis added)"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive (emphasis added)"; *Larson v. Sprint Nextel Corp.*, 2010 WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 *McLaughlin on Class Actions* § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion (emphasis added).");  and, *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," thus establishing that the proposed settlement was noncollusive (emphasis added).").

The negotiation was hard fought and resulted in a substantial benefit of millions of dollars to the Class Members.  Thus, there can be no dispute that the Settlement was reached through non-collusive arm's length negotiations by the Parties.  *See Liebman*, 73 F.R.D. at 535.

///

---

factors to be considered in evaluation the reasonableness of [a]…settlement."  *Milstein v. Huck*, 600 F. Supp. 245, 267 (E.D.N.Y. 1984); *Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J. 1979).

Furthermore, both parties were represented by experienced class action counsel in this action.  As established by the declarations filed concurrently herewith, Class Counsel are experienced consumer class action attorneys.  Given that experience and expertise, Class Counsel is well qualified to assess the prospects of the case and to negotiate a favorable resolution for the class.  Similarly, Defendants' attorneys have extensive class action experience and have litigated numerous consumer class actions across the nation in both state and federal courts.  Thus, the informed conclusion by the Parties should be given deference.  *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D 359, 380 (N.D. Ohio 2001).

### 2.  *The Settlement is fundamentally fair, reasonable and adequate.*

Moreover, there can be little doubt that the Settlement is fair, reasonable and adequate because it necessarily satisfies the "within the range of possible approval" standard for preliminary approval.[8]

Although Plaintiffs strongly believe that Defendants' conduct violates Penal Code § 630 et seq., Plaintiffs are aware that the jury, the Court on a dispositive motion, or a court on appeal, may determine that:  (1) the Class Members consented to being recorded; (2) individual inquiries predominate regarding whether each Class Member consented to being recorded; (3) individual inquiries predominate regarding whether each call was even recorded; and (4) individual inquiries predominate regarding whether each of the Class Members' calls that were recorded were confidential communications to which Penal Code § 632 applies.

---

[8] Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.  In short, there is a presumption that negotiations were conducted in good faith.  *Newberg*, § 11.51; *In re Chicken Antitrust Litigation*, 560 F. Supp. 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 667, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979); *In re Armored Car Antitrust Litigation*, 472 F. Supp. 1357 (N.D. Ga. 1979); *Sommers v. Abraham, Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. Pa. 1978).

Despite said risks, uncertainties and delays, the proposed Settlement provides each Class Member with an uncapped award.  Each Class Member merely needs to submit a valid and timely claim in order to receive a portion of the Settlement obtained by Plaintiffs.  Considering the difficulties discussed above, Plaintiffs assert that the current Settlement is fundamentally fair, reasonable and adequate.  As such, Plaintiffs request that this Court approve the Parties' Settlement.

### D. THE PROPOSED PLAN OF NOTICE SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.

"The Court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. Proc. 23(e).  Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and, (4) that any class member may appear and be heard at the fairness hearing.  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 8.32 at 262-68 (4th ed. 2002).  The notice must also indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel.  Fed. R. Civ. P. 23(c)(2).

Subsection (c)(2)(B) of Rule 23 further provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Notice by publication is appropriate where insufficient information exists to identify class members or where the notice would sufficiently advise potential class

members of their rights under the settlement. *See Gallucci v. Boiron, Inc.*, 2012 WL 5359485, *7 (S.D.Cal. October 31, 2012) (finding that notice by publication was "reasonable and appropriate" and "fully satisfied all notice requirements under the law" given that defendant "does not collect or maintain information sufficient to identify Class Members."); *Beck-Ellman v. Kaz USA, Inc.*, Slip Copy, 2013 WL 1748729, *8 (S.D.Cal. January 07, 2013) (order preliminarily approving settlement, noting that publication notice and settlement website are "adequate and sufficient to inform the class members of their rights", even though the parties had also proposed notice by mail in case the court required such notice); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2012 WL 253298, *3 (N.D.Cal. January 26, 2012) (denying defendant's motion to decertify class, rejecting defendant's argument that notice to class members would be impossible since notice by publication would be sufficient to alert consumers who own LCD products that they might be members of the proposed classes); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 261 (S.D.Cal. September 20, 1988) (noting "the Supreme Court does not require actual notice for all members of a class in every class action. With so many potential class members here, other forms of notice, such as notice by mail, publication, and radio and television broadcast, could be the 'best practicable' under the circumstances."); *Hunt v. Check Recovery Systems, Inc.*, 2007 WL 2220972, *3 (N.D.Cal. August 01, 2007) ("Delivery by first-class mail can satisfy the best notice practicable when there is ***no indication*** that any of the class members cannot be identified through reasonable efforts.") (emphasis added); *In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1080 (N.D.Cal. April 12, 2007) (granting plaintiffs' motion for provisional certification of settlement class and approving notice by publication only given that no list existed of the class members: "Because defendants do not have a list of potential class members, Doc. # 301, ¶ 2, the court agrees with plaintiffs that ***notice by publication is the only reasonable method*** of informing class members of the pending class action and the Lenox settlement.") (citing FRCP 23(c)(2)(B); Manual

for Complex Litigation (4th ed. 2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort.") (emphasis added).

Here, the Settlement Agreement details the procedure for implementing the Settlement and notifying the Class Members. (*See* Kazerounian Decl., Exh. 5.) Within 30 days of entry of preliminary approval, the Claims Administrator will provide publication notice through multiple statewide publications. Further, given the difficulties discussed during Hiler's deposition, notice by publication is appropriate here because it would be impossible to identify all of the Class Members whose calls were recorded, as well as the individuals who did not receive the call recording disclosure. Accordingly, the Parties' proposed notice complies with due process requirements. *Mendoza v. United States*, 623 F.3d 1338, 1351 (9th Cir. 1980).

In addition, the Notice meets all of the requirements of Rule 23(e): it identifies the parties to the Actions and describes the nature of the Actions and the Class in a straightforward manner; it succinctly describes the essential terms of the Settlement and identifies all parties against whom claims are being released; it provides Class Members with information on how to opt out of the Class and provides all applicable deadlines for such action; and it informs Class Members that if they do not exclude themselves from the Class, and the Settlement is approved, they will be bound by the resulting judgment.[9]  In addition, the Notice instructs Class Members to contact Class Counsel or the Claims Administrator to obtain more detailed information regarding the Settlement.  In short, the Notice will provide the necessary information for Class Members to make an informed decision regarding the proposed

---

[9] Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlement.[10]

### E. PROPOSED PRELIMINARY SCHEDULE

The Parties propose that the Court establish the following deadlines related to the proposed Settlement:

1. Publication Notice:  To be completed within 30 days from the entry of the Order Granting Joint Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order").

2. Submission of Claim Due:  Claims must be postmarked or submitted online within 90 days from the completion of notice by publication.

3. Entry of Appearance:  Must be filed with the Court no later than 90 days from completion of Notice

4. Requests for Exclusion Due: Must be received by the Claims Administrator and postmarked no later than 90 days from completion of Notice.

5. Objections Due:  Must be filed with the Court no later than 90 days from the Completion of Notice.

6. Final Approval Hearing ("Fairness Hearing"):  30 days after deadline to request exclusion or object to Class Action Settlement, as the Court's schedule permits.

7. Submission of Papers in Support of Final Approval and Incentive Award: 28 days prior to Fairness Hearing date

## V.  **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court grant preliminary approval of the proposed Settlement and enter the Proposed Order filed concurrently with this Motion.

---

[10] The content and method of the notice should be designed to apprise the class members of the terms of the proposed settlement and of the class members' rights regarding settlement. *See Mullane*, 339 U.S. at 314; *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 378 (E.D. Pa. 1970).

Dated: December 11, 2013                    Respectfully submitted,

                                **ORSHANSKY & YEREMIAN LLP**


                                By: ____/s/ Anthony J. Orshansky
                                 ANTHONY J. ORSHANSKY, ESQ.
                       ATTORNEY FOR PLAINTIFF KNELL, ET AL.



                                        **REED SMITH LLP**

                                By: ____/s/ Abraham Colman____
                                  ABRAHAM COLMAN, ESQ.
                    ATTORNEY FOR DEFENDANT, BANK OF AMERICA, N.A.

### SIGNATURE CERTIFICATION

       Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative
Policies and Procedures Manual, I hereby certify that the content of this document
is acceptable to Abraham Colman, Esq., counsel for Defendants, and that I have
obtained Mr. Colman's authorization to affix his electronic signature to this
document.



                                **ORSHANSKY & YEREMIAN LLP**


                                By: ____/s/ Anthony J. Orshansky
                                 ANTHONY J. ORSHANSKY, ESQ.
                       ATTORNEY FOR PLAINTIFF KNELL, ET AL.

[ADDITIONAL PLAINTIFF'S COUNSEL]

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Matthew M. Loker, Esq. (SBN: 279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone (619) 233-7770
Facsimile: (619) 297-1022

**STEVEN L. MILLER, APC**
Steven L. Miller (SBN: 106023)
stevenlmiller@sbcglobal.net
2945 Townsgate Rd Suite 200
Westlake Village, CA
Telephone:   (818) 986-8900
Facsimile:    (866) 581-2907